No. 98-149

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 145

295 Mont. 22

982 P.2d 1037

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BURLY M. GRIMES,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy; Helena, Montana

Bridgitt Erickson, Attorney at Law; Lincoln, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Valerie D. Wilson, Jefferson County Attorney; Boulder, Montana

Submitted on Briefs: January 28, 1999

No

Decided: June 18, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. By information filed in the District Court for the Fifth Judicial District in Jefferson County, the defendant, Burly Michael Grimes, was charged with aggravated kidnaping, in violation of § 45-5-303, MCA; robbery, in violation of § 45-5-401, MCA; and deliberate homicide, in violation of either § 45-5-102(1)(a) or (b), MCA. Following trial by jury, Grimes was convicted of all three offenses. He appeals from his convictions. We affirm the judgment of the District Court.**

**¶2. There are three issues on appeal:**

**¶3. 1. Did the District Court err when it denied Grimes' motion to suppress?**

**¶4. 2. Did references to a co-defendant's statements to law enforcement officials violate Grimes' right to confront witnesses against him?**

**¶5. 3. Did the District Court err when it refused Grimes' proposed "jailhouse informant" instruction?**

## FACTUAL BACKGROUND

**¶6. On February 9, 1996, a Montana Highway Patrolman observed a vehicle with Idaho license plates traveling through Billings with a small child standing up unrestrained on the front seat. The officer requested that his dispatcher run the license plate through the National Crime Information Center database. He was told that the vehicle was registered to Michael Fox, who had been reported missing**

approximately three days earlier.

¶7. The MHP officer initiated a traffic stop of the vehicle. In addition to the child, Burly Grimes, his co-defendant Joe Gordon, and Gordon's wife occupied the vehicle. Grimes and Gordon produced identification which established that neither was Michael Fox, and both denied knowing Fox. The officer handcuffed Gordon and Grimes prior to speaking with them. He did not provide *Miranda* warnings. Each attributed possession of the vehicle to the other.

¶8. Yellowstone County detectives arrived at the scene of the stop and checked the trunk of the vehicle for a body. One detective informed Grimes that he was being detained as part of an investigation. He advised Grimes of his *Miranda* rights and Grimes requested counsel, at which point the detective halted the interview. Gordon waived his *Miranda* rights, however, and spoke with detectives. Grimes and Gordon were eventually transported to Idaho to face grand theft charges. Pursuant to a plea agreement, Gordon provided law enforcement authorities with the location of Fox's body and other information, which led to the arraignment of both men in Jefferson County on charges off kidnaping, burglary, and deliberate homicide. Their cases were severed for purposes of trial, and Gordon did not testify at Grimes' trial.

## ISSUE 1

¶9. Did the District Court err when it denied Grimes' motion to suppress?

¶10. The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *See State v. Roberts* (1997), 284 Mont. 54, 56, 943 P.2d 1249, 1250.

¶11. Grimes moved to suppress both the fruits of the traffic stop and his pre-*Miranda* custodial statements. The District Court suppressed the pre-*Miranda* statements, but denied the rest of the motion. Grimes contends that the child restraint law, § 61-9-420, MCA (1995), did not provide sufficient cause to initiate an investigative stop.

¶12. The MHP officer who initiated the traffic stop of the vehicle in which Grimes was a passenger testified at the suppression hearing that he decided to pull over the vehicle because of the unrestrained child. He also testified that prior to the stop, he

obtained an NCIC report that the registered owner of the vehicle, Michael Fox, was a missing person, as well as information from Idaho law enforcement officials that confirmed the report and indicated that Fox was "missing, and possibly endangered."

¶13. We have adopted a two-part test to determine whether an officer had sufficient cause to stop a person. First, the State must show objective data from which an experienced officer can make certain inferences. Second, the State must demonstrate a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *See State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296.

¶14. With respect to its conclusion that the officer had a particularized suspicion justifying the stop, the District Court found that "the NCIC report alone provided enough objective data for Officer McDonald to infer that the occupants of the vehicle might have more information about the whereabouts of Fox."

¶15. The District Court based its conclusion on the MHP officer's receipt of the missing persons bulletin, rather than on the child restraint law. Therefore, the question becomes whether the missing and endangered report for the registered owner of a vehicle could serve as the basis for a particularized suspicion.

¶16. In *State v. Kills On Top* (1990), 243 Mont. 56, 793 P.2d 1273, Billings law enforcement officers stopped a vehicle which matched the license plates and description of a vehicle described in a police bulletin, whose occupants might have been involved in an assault and kidnaping in Miles City. We held that when such information is obtained from a flier or bulletin it may serve as the basis for a vehicular stop. *See Kills On Top*, 243 Mont. at 82-83, 793 P.2d at 1291.

¶17. The basis for the traffic stop in this case is factually similar to the *Kills On Top* stop. Here, the MHP officer received an NCIC report that the vehicle he was following was registered to an individual who was missing and possibly endangered. We conclude that under these circumstances the officer could form a particularized suspicion that the occupants of Fox's vehicle had been involved in wrongdoing or were witnesses to criminal activity. *See Gopher*, 193 Mont. at 194, 631 P.2d at 296; *see also Anderson v. State* (1996), 275 Mont. 259, 263, 912 P.2d 212, 214. Because we conclude that the stop was valid, we need not address Grimes' "fruit of the poisonous tree" arguments and we affirm the District Court's denial of Grimes' motion to

suppress.

## ISSUE 2

¶18. Did references to a co-defendant's statements to law enforcement officials violate Grimes' right to confront witnesses against him?

¶19. Our standard of review for questions of constitutional law is plenary. *See State v. Schnittgen* (1996), 277 Mont. 291, 295, 922 P.2d 500, 503. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *See Schnittgen*, 277 Mont. at 295-96, 922 P.2d at 503.

¶20. Grimes contends that the cumulative effect of repeated references at trial to the fact that Gordon provided information to the State which led to charges against Grimes, violated his Sixth Amendment right to confront witnesses against him. Grimes does not allege any violation of Article II, Section 24, of the Montana Constitution. He identifies four occasions during trial on which the State elicited testimony that Gordon cooperated with law enforcement investigators, and one occasion where the State elicited testimony from an informant that Grimes told him Gordon had "snitched."

¶21. Grimes contends that the cumulative effect of the following statements violated his confrontation rights because they implied to the jury that Gordon provided evidence against Grimes and Grimes did not have the opportunity to cross-examine Gordon:

¶22. 1. The State asked one of the detectives how long he spoke with Gordon. In response to a successful objection, the State reformulated the question, and the objection was again sustained. The State then asked whether the detective had any further contact with Gordon, which the detective answered affirmatively, but without explanation.

¶23. 2. An FBI agent testified that he was present when Gordon was interviewed in Idaho Falls.

¶24. 3. An Idaho detective testified that he received information from another detective who had interviewed Gordon, at which point Grimes objected and the

objection was sustained.

¶25. 4. Another detective testified about locating Fox's body. Prior to the testimony and out of the presence of the jury, the court ensured that the structure of the questioning would not identify how law enforcement officials learned where Fox's body was located.

¶26. Grimes contends that the cumulative effect of these references, combined with the informant's testimony, "could only lead the jury to conclude that Gordon inculpated Grimes in the charged offenses."

¶27. In support of his argument, Grimes relies upon our line of cases which adopted and interpreted *Bruton v. United States* (1968), 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d. 476. In *Bruton*, the United States Supreme Court held that extrajudicial statements of a co-defendant who is not subject to cross-examination may violate the Confrontation Clause. *See Bruton*, 391 U.S. at 135-36, 88 S. Ct. at 1628, 20 L. Ed. 2d at 485. We adopted *Bruton* in *State v. Fitzpatrick* (1977), 174 Mont. 174, 569 P.2d 383.

¶28. Grimes successfully argued to the District Court that his trial should be severed from Gordon's because a joint trial would raise *Bruton*-type problems. *Bruton* bars the introduction of a co-defendant's post-arrest statements implicating other defendants when the co-defendant will not testify at trial. *See Bruton*, 391 U.S. at 126, 88 S. Ct. at 1622, 20 L. Ed. 2d. at 479-80.

¶29. *Bruton*, and our cases which follow it, are inapplicable to the statements that Grimes challenges on appeal. The statements, except the testimony of Steve Ortega, contain no substantive information other than indicating that particular investigators were present each time Gordon was interviewed. The statements relate nothing of substance which was revealed during those interviews.

¶30. As a result, the statements fall within the exception to the *Bruton* rule applicable "where a statement is not powerfully incriminating but implicates the complaining defendant 'only to the extent that the jury may make inferences based on other clearly admissible evidence.'" *State v. Weinberger* (1983), 204 Mont. 278, 296, 665 P.2d 202, 212 (citations omitted). A review of the record demonstrates that the statements were, if anything, "simply linkage testimony . . . incriminating only in conjunction with other facts." *Weinberger*, 204 Mont. at 297, 665 P.2d at 212

(citations omitted).

¶31. In *Weinberger*, the defendant had the opportunity to confront each witness who made the statements complained of. The statements were not critical to the State's case in light of other evidence, nor were they "powerfully incriminating," nor did any of the statements directly implicate the defendant by name or connect him with the murder. *See Weinberger*, 204 Mont. at 297, 665 P.2d at 212. We find the same characteristics to be present in the statements made by the law enforcement officials in this case. The substance of what Gordon said to investigators, or even whether he said anything at all, was never disclosed to the jury. No statement made by Gordon or attributed to Gordon was introduced at trial. Twice Grimes made timely objections which were sustained by the court, and some of the witnesses' statements consisted only of "yes" and "no." The statements complained of in this case were not as informative as those admitted in *Weinberger*.

¶32. In addition to the statements made by law enforcement investigators, Steve Ortega, who shared a jail cell with Grimes while he was incarcerated in Idaho, testified that Grimes told him that "a Joe, I guess the other guy, which was Joe -- I don't recall his last name -- but how if, if he wouldn't have snitched he wouldn't have got caught because they didn't know they had a murder or something."

¶33. The holding from *Bruton* is also inapplicable to this statement. Ortega's testimony related what he had been told by Grimes, not Gordon. Grimes had the opportunity to cross-examine Ortega and, therefore, was not denied his right to confrontation.

¶34. We conclude that no co-defendant testimony implicating Grimes was introduced at trial and, therefore, Grimes' Sixth Amendment Confrontation Clause rights were not violated.

## ISSUE 3

¶35. Did the District Court err when it refused Grimes' proposed "jailhouse informant" instruction?

¶36. As a preliminary matter, the State contends that Grimes did not properly preserve this issue for appeal because he did not voice an objection when the District

Court refused his proposed instruction.

¶37. While it is true that we will not predicate error upon the failure to give an instruction when the party alleging the error failed to offer the instruction, *see State v. Swan* (1996), 279 Mont. 483, 486, 928 P.2d 933, 935, we have previously held that when a party's offered instructions are refused by the court in criminal cases, that party has no duty to make further objections for the record. *See State v. Young* (1983), 206 Mont 19, 24, 669 P.2d 239, 242. The statutory provision we relied on in *Young* was amended by the Legislature in 1991, and the settlement of jury instructions in criminal trials is now contained in § 46-16-410, MCA, which provides in part: "A party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of instructions."

¶38. In this case, the District Court's refusal to give the proposed instruction created an omission from the instructions that Grimes contends was error. When the instruction was offered by Grimes and subsequently refused by the trial court, a record of Grimes' position was created which was the equivalent of an objection to an instruction offered by an opposing party. To require a party to object to a court's rejection of the party's own proposed instruction would create a redundancy. The basis of the claim of error is obvious from the content of the instruction and an adequate record exists to review the issue on appeal.

¶39. Objections to jury instructions proposed by the opposing party serve the same functions as evidentiary objections. The Rules of Evidence require timely, specific objections to the admission of evidence, *see* Rule 103, M.R.Evid., because "[t]he function of the objection is, first, to signify that there is an issue of law and, second, to give notice of the terms of the issue." *See* 1 Wigmore on Evidence § 18 (Tiller rev. 1998). When a party proposes a jury instruction and the trial court refuses to give the instruction, the court knows that there is an issue of law raised by the party seeking the instruction and, from the nature of the proposed instruction, knows the nature of the party's contentions. Therefore, we hold that when a party proposes an instruction which is rejected by the trial court, that party has made a sufficient objection for the purposes of § 46-16-410, MCA, and has no duty to make a further objection for the record.

¶40. We review claims of instructional error in a criminal case to determine whether

the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable in the case. *See State v. Goulet* (1997), 283 Mont. 38, 41, 938 P.2d 1330, 1332.

¶41. Grimes contends that the District Court erred when it failed to give his proposed instruction No. 18, which stated:

You have heard testimony that Steve Ortega, a witness, has received benefits, compensation, or favored treatment from the government in connection with this case. You should examine his testimony with greater caution than that of ordinary witnesses. In evaluating that testimony, you should consider the extent to which it may have been influenced by the receipt of benefits from the government.

¶42. Steve Ortega resided in a jail cell in Idaho Falls with Grimes. During that period, Ortega made contact with the FBI regarding an unrelated federal drug case in which he sought to provide information in exchange for favorable treatment. FBI agent William Long negotiated an agreement with Ortega to provide information for the federal case in exchange for a reduction of the charges Ortega faced. During their second interview, Ortega told Agent Long that he had information about a murder in which Grimes was involved; however, Ortega did not relate any specific information about Grimes until after he had testified in the federal drug case and received his bargained-for plea agreement. At Grimes' trial several months later, Ortega testified that Grimes told him about the murder.

¶43. Montana has no prior case law addressing cautionary instructions for "jailhouse informants." The proposed instruction which Grimes offered the District Court is patterned on Ninth Circuit Model Criminal Jury Instruction No. 4.10, and Grimes cites Ninth Circuit case law in support of his position. When the District Court rejected the proposed instruction it reasoned that the jury was already adequately instructed to view Ortega's testimony cautiously because it had been instructed to view oral admissions and confessions by the defendant with caution.

¶44. In *Guam v. Dela Rosa* (9th Cir. 1981) 644 F.2d. 1257, the Ninth Circuit concluded that a defendant was entitled to a cautionary instruction when an accomplice testified against him in exchange for the Territory's promise not to prosecute the accomplice. The court held that when a witness is motivated primarily

by personal gain, and not some independent law enforcement purpose, the trial court should give a cautionary instruction. *See Dela Rosa*, 644 F.2d at 1260. The court also held that when a trial court refuses to give special instructions on the testimony of an informer, the standard of prejudice is whether the testimony is important to the case, "*i.e.*, the defendant's guilt rested almost entirely on the testimony of the [informer] and the other evidence linking the defendant to the criminal activity is weak." *Dela Rosa*, 644 F.2d at 1260 (citing *United States v. Bernard* (9th Cir. 1980), 625 F.2d 854).

¶45. We agree with the Ninth Circuit's reasoning. We hold that when a government informant motivated by personal gain rather than some independent law enforcement purpose provides testimony, a cautionary instruction is the more prudent course of action.

¶46. We further hold that when a trial court refuses a proposed cautionary instruction, the standard of prejudice is whether the testimony was crucial to the State's case in light of other evidence. This standard is in accord with our jurisprudence on prejudice. *See State v. Birthmark* (1992), 253 Mont. 526, 530, 833 P.2d 1103, 1105; *Brodniak v. State* (1989), 239 Mont. 110, 115, 779 P.2d 71, 74 (the essential question is whether there is a reasonable possibility that the error might have contributed to the conviction).

¶47. In this case, the State contends that Ortega received no personal gain from his testimony because his deal with the FBI had already been completed before he provided information about Grimes' crimes. Ortega testified at trial that he couldn't remember the chronology of the specific instances during which he had provided Agent Long with information related to Grimes. Long testified that during their second meeting he told Ortega "it's possible that the deal can be made, but I've got to know what you . . . what kind of information you can offer me and whether that information is actually valuable in my investigation before we can make a deal." Long testified that it was during the course of this meeting that Ortega first indicated that he had information about the Fox homicide.

¶48. From the record it is unclear whether Ortega considered the Grimes information to be part of his deal with the FBI, or whether he considered the deal to be limited to providing information for the federal drug case. There was no evidence, however, that he was motivated to testify by any "independent law enforcement purpose." Ortega's motivation notwithstanding, we conclude that the District

Court's failure to give the requested cautionary instruction was harmless in this case.

**¶49. The jury heard eyewitness testimony that Grimes was with Fox prior to Fox's disappearance. He was in Fox's vehicle when it was recovered in Montana, and he was in possession of clothing which belonged to Fox and also of clothing stained with Fox's blood.**

**¶50. In light of other, overwhelming evidence introduced at trial which linked Grimes to the victim, we conclude that Ortega's testimony was not crucial to the State's case, and that there was strong evidence from which the jury could have convicted Grimes without it. Therefore, we hold that the failure to provide a cautionary instruction was not prejudicial to Grimes.**

**¶51. We affirm the judgment of the District Court.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

Justice Karla M. Gray, specially concurring.

¶52 I concur in the Court's opinion on issues 1 and 2. On issue 3, I agree that the District Court did not commit reversible error, but I do not agree with the Court's analysis.

¶53 With regard to issue 3, I disagree with the Court's conclusion that Grimes did not waive his right to assert as error the court's refusal to give his proposed instruction no. 18. The Court correctly quotes § 46-16-410, MCA, which precludes a party from asserting error as to any omission from the instructions "unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of instructions." The Court decides to disregard the statute--even though Grimes clearly did not meet the statutory requirements--based on its determinations that the basis of the claimed error is obvious from the content of the instruction and an adequate record exists to review the issue on appeal. I cannot agree.

¶54 In the first place, it is my view that we cannot properly substitute our judgment for that of the Legislature in this matter. The statute was duly enacted by the Legislature and we are bound to apply it by its terms. The Court does not do so. I would conclude, pursuant to § 46-16-410, MCA, that Grimes waived his right to raise the instructional error on appeal.

¶55 Nor do I agree that the basis of the claim of error is obvious or that an adequate record exists to review the issue in this case. Grimes proposed the instruction and stated its source to be "Model Criminal Jury Instructions for the Ninth Circuit, No. 4.10 (1992)." Montana courts are not required to give any or every instruction approved by the Ninth Circuit. Moreover, Grimes did not cite to *Dela Rosa* or any other case authority presenting the rationale for the instruction, either at the time the instruction was offered or at the time the District Court refused it. Nor did Grimes object in any fashion to the trial court's rationale in refusing the proposed instruction, which was that it constituted "a comment on the evidence."

¶56 Furthermore, it is my view that *Dela Rosa* does not support the giving of the proposed "jailhouse informant" instruction in this case. In *Dela Rosa*, an actual accomplice to the crimes charged against the defendant testified that the defendant admitted he had committed the crimes and disclosed the details of the crimes. The accomplice was the prosecution's primary witness at trial and, importantly, it was undisputed that the accomplice's testimony was secured by a promise not to prosecute him in exchange for his

cooperation. Under such circumstances, the Ninth Circuit determined--in a per curiam opinion--that the trial court should have given the instruction to minimize unfairness. *Dela Rosa*, 644 F.2d at 1260. Here, Ortega was not an accomplice, was not the prosecution's primary witness and, importantly, it was far from undisputed--as the Court admits--whether his testimony was offered in exchange for anything.

¶57 Finally, our standard is whether the instructions given, taken as a whole, "fully and fairly instruct the jury on the law applicable to the case." *See Goulet*, 283 Mont. at 41, 938 P.2d at 1332. Here, the District Court adequately instructed the jury that it should regard any admission or confession [by Grimes] with caution.

¶58 I would hold that Grimes waived his right to raise the instructional error on appeal. I would further hold that, in any event, Grimes was not entitled to have the instruction given and the District Court did not err in refusing it. Since the Court reaches the same ultimate conclusion--that is, that no reversible error was committed--I specially concur in the Court's opinion on issue 3.

/S/ KARLA M. GRAY