No. 98-685

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 57

299 Mont. 6

997 P. 2d 768

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RAYMOND CLARK SMITH, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

Honorable Michael Prezeau, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Amy N. Guth, Libby, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Cregg W. Coughlin,

Assistant Attorney General, Helena, Montana

Bernard Cassidy, County Attorney, Libby, Montana

Submitted on Briefs: January 20, 2000

Decided: March 9, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1.Two separate causes, each involving several counts against Raymond Clark Smith, were consolidated. Smith was ultimately charged with assault pursuant to § 45-5-202(2)(b), MCA (1997), intimidation pursuant to § 45-5-203, MCA, and assault on a peace officer pursuant to § 45-5-210, MCA. In a non-jury trial, the Nineteenth Judicial District Court, Lincoln County, found Smith guilty of felony assault and assault on a peace officer. For these crimes, he was sentenced to two ten-year terms at the Montana State Prison, plus two additional ten-year terms pursuant to § 46-18-221, MCA, for use of a weapon in the commission of each crime. The District Court ordered all four sentences to run consecutively. Smith appeals his sentence, which we modify, and his incarceration at the Montana State Prison, which we affirm.

¶2.Smith poses the following two issues, as restated:

¶3. Do the weapon enhancement sentences for the crimes of felony assault and assault on a police officer violate Montana's double jeopardy provision?

¶4. Did the District Court err when it concluded that Smith did not suffer from a mental disease or defect that rendered him unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law pursuant to §§ 46-14-311 and -312, MCA?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5. In the mountains of Lincoln County, Montana, Smith was involved in a fight with John Garrison. Smith drove by Garrison, whom he did not know, and yelled an obscenity. Garrison drove down the road, pulled up to Smith's vehicle, and asked "what the deal was." Smith and Garrison exchanged words. After Smith took off a gun he was wearing, he and Garrison began to fight. The fight stopped momentarily, only to start up again. Smith pulled out a second gun and shot Garrison in the head. The bullet entered the left parietal area of Garrison's scalp and exited about two inches above that. Smith continued to aim the gun at Garrison until Garrison got into his van. Garrison was able to drive himself to the police station in Troy, Montana.

¶6. When Lincoln County sheriff's officers arrived at Smith's home to question him about the incident, Smith was armed, very agitated, and told the officers that he would not accompany them to the police station. One of the officers suggested that Smith call the police station when he calmed down. The following day, officers talked to Smith over the telephone. He told them they would have to take their own chances if they came to arrest him. Eventually, Smith surrendered himself to the authorities and after a brief incarceration, posted bond. A condition of his bond was that he could not possess firearms.

¶7. The police learned that Smith violated the condition two months later when they received a call from Dr. Myers, a counselor who was conducting a psychological evaluation on Smith in relation to the charges against him. Dr. Myers informed the police that Smith had left his office and was carrying a weapon. Shortly thereafter, Officer Thrasher observed Smith in his car and stopped him. Smith refused to exit his vehicle. He appeared agitated. When Thrasher approached Smith's vehicle, Smith pointed a gun at him. Thrasher drew his gun. Two other officers arrived at the scene, and Thrasher was standing at Smith's car door pointing his weapon at Smith. Smith was then pointing his gun behind his own ear. The second officer tried to grab Smith's gun, the two struggled and the gun fired but no one was hit. The third officer broke the passenger window with a baton, dove in the window, and pried the gun from Smith's hand. After Smith was restrained, he volunteered yet another gun.

¶8. At a hearing that followed, the District Court determined that Smith was not fit to proceed to trial and ordered him to be transported to the Montana State Hospital at Warm Springs. Three months later, Smith was transported back to the Lincoln County Detention Facility after the State Hospital determined that he was ready to proceed to trial. Smith

remained in jail because he was not able to post bond.

¶9.Smith pled not guilty to all the charges against him and waived his right to a jury trial. He asserted the defenses of self-defense, compulsion, and mental disease or defect. Testimony regarding Smith's mental condition was taken at trial. Dr. Stratford, the State's expert, opined that Smith has a personality disorder which makes him suspicious, distrustful and fearful of authority, he has poor impulse control, but he is not psychotic. Dr. Myers, who appeared as Smith's expert, testified that Smith suffers from a delusional disorder which prevented him from appreciating the restrictions against his possession of firearms. Smith's family physician, Dr. Rice, testified that Smith is missing five to ten percent of his brain and that he suffers from a complex partial seizure disorder caused by a cerebral hemorrhage. As a result, he suffers from blank spells, uncontrollable outbursts of anger and abnormal behavior. Dr. Rice suggested that stress triggers mood changes in Smith and that medication helps him to deal with his condition.

¶10.Notwithstanding this evidence, the District Court concluded that Smith was capable of forming the requisite mental intent to commit the crimes of which he was convicted.

¶11.Upon sentencing, Smith maintained that he suffers from a mental disease or defect that should cause the District Court to sentence him to Warm Springs State Hospital instead of the Montana State Prison. He also objected to the additional weapon enhancement sentences imposed against him on grounds that they violate the constitutional prohibitions against double jeopardy and due process.

¶12.We review these two issues.

## STANDARD OF REVIEW

¶13.Both issues are framed as questions of law. Our standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *See State v. Grimes*, 1999 MT 145, ¶ 19, 295 Mont. 22, ¶ 19, 982 P.2d 1037, ¶ 19. For questions of constitutional law, our review is plenary. *See State v. Anderson*, 1998 MT 258, ¶ 6, 291 Mont. 242, ¶ 6, 967 P.2d 413, ¶ 6.

## ISSUE 1

¶14.Do the weapon enhancement sentences for the crimes of felony assault and assault on

a police officer violate Montana's double jeopardy provision?

¶15.In *State v. Guillaume*, 1999 MT 29, ¶ 16, 293 Mont. 224, ¶ 16, 975 P.2d 312, ¶ 16, we held that "application of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25[,] of the Montana Constitution." In *Guillaume*, we examined in particular the constitutionality of adding a weapon enhancement sentence to a defendant's conviction of felony assault. We held that because a conviction of felony assault pursuant to § 45-5-202(2)(b), MCA, requires proof that the person purposely or knowingly caused reasonable apprehension of serious bodily injury in another by use of a weapon, an additional sentence for use of a weapon violates the double jeopardy provision of the Montana Constitution.

¶16.Based on our holding in *Guillaume* and because the facts in Smith's case are similar, we strike the additional ten-year sentence Smith received for use of a weapon in committing a felony assault.

¶17.For the same reason, we strike the additional ten-year sentence Smith received for use of a weapon in committing an assault on a police officer. This crime, as committed by Smith and set forth in the facts, requires proof that the person purposely or knowingly caused reasonable apprehension of serious bodily injury in a peace officer or judicial officer by use of a weapon. *See* § 45-5-210(1)(b), MCA. Without the use of a weapon, Smith could have been convicted of this offense only if he caused an actual injury. Thus, he is being punished for his use of a weapon where there is no injury. Therefore, Smith's additional sentence for use of a weapon pursuant to § 46-18-221, MCA, violates the double jeopardy provision of the Montana Constitution.

¶18.The State does not contest this issue. The State additionally suggests there is no need to remand this matter to the District Court for resentencing since Smith already has received the maximum sentence for each offense he committed. We agree and vacate both ten-year weapon enhancement portions of Smith's sentence.

ISSUE 2

¶19.Did the District Court err when it concluded that Smith did not suffer from a mental disease or defect that rendered him unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law pursuant to §§ 46-14-311 and -312,

MCA?

¶20.Even though the District Court found that Smith acted purposely and knowingly when he committed the crimes of which he was convicted, Smith maintains that he suffers from a mental disease or defect that should have caused him to be incarcerated at the Warm Springs State Hospital instead of the Montana State Prison. Smith contends that by committing him to the State Prison, the District Court deprived him his right under Article II, Section 28, of the Montana Constitution, and similarly § 46-18-101 of the Montana Code Annotated, to have his sentence reflect principals of prevention and reformation in light of his unique and particular posture as a mentally ill person.

¶21.It was the District Court's determination that although the facts suggest that Smith has a mental disease or defect, his condition does not require that he be committed to the State Hospital. *Cf. State v. Watson* (1984), 211 Mont. 401, 686 P.2d 879 (it is possible to be diagnosed as suffering from a mental illness for medical and treatment purposes and, from a legal standpoint, still be criminally culpable and sentenced to imprisonment pursuant to § 46-14-311, MCA). Sections 46-14-311 and -312, MCA, require that when at the time of the commission of his offense, the defendant was suffering from a mental disease or defect that rendered him unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law, the sentencing court shall sentence the defendant to be placed in the appropriate correctional or mental health facility. The District Court found no evidence that Smith was unable to appreciate the criminality of his behavior. The court did not agree with the expert's testimony that Smith did not appreciate the illegality of his possession of firearms. To the contrary, the District Court determined from the evidence that Smith was knowledgeable about his right to bear arms--he understood this right previously had been restricted by the federal court, for which he submitted an application to have his right restored through a pardon, and he made it a point to tell everyone that he had lost his "man-given" right to bear arms but still had his "God-given" right to bear arms. The District Court further recognized that carrying firearms is only an incidental aspect of the offenses with which Smith stands convicted. It was Smith's use of the weapons, not the fact that he was carrying them, which established the necessary elements of the offenses.

¶22.Smith argues that the District Court employed an incorrect definition of mental disease or defect and cites the definition we recently developed in *State v. Wooster*, 1999 MT 22, ¶ 43, 293 Mont. 195, ¶ 43, 974 P.2d 640, ¶ 43, in which we affirmatively defined the term as:

an affliction with a mental disease or mental condition that is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment, and rehabilitation.

Smith contends that under this definition, he suffers a mental disease or defect because he has a personality disorder which makes him suspicious, distrustful and fearful of authority, for which he requires counseling and medication; thus, he should be incarcerated at Warm Springs.

¶23.Contrary to Smith's contentions, there is no indication that the District Court employed the wrong definition of mental disease or defect. Rather the court determined that he did not satisfy the additional requirement under § 46-14-311, MCA, that his mental condition had *the effect* of rendering him unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law. Section 46-14-312, MCA, provides that a defendant be committed to a mental health facility when a court finds that the defendant at the time of the commission of the offense suffered from a mental disease or defect "as described in 46-14-311." The "as described" language refers to *the effect* of a defendant's mental condition, which is an element that also must be satisfied.

¶24.Even assuming that Smith has a mental disease or defect, the District Court found that his mental condition did not have the effect of rendering him unable to appreciate the criminality of his behavior or to conform his behavior to the requirements of the law. Based on the District Court's consideration, we conclude that its interpretation of the law is correct. Smith does not argue that the facts pertaining to his ability to appreciate the criminality of his acts do not support the court's conclusion; thus, our analysis stops here.

¶25.In conclusion, we vacate the District Court on its application of the weapon enhancement statute, but affirm Smith's incarceration at the Montana State Prison.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART