No. 02-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 320N

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

FRANKLIN McLAUGHLIN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and for the County of Gallatin,
                    The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Franklin McLaughlin, CCA/CCC, Shelby, Montana (*pro se*)

        For Respondent:

                Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant
                  Montana Attorney General, Helena, Montana; Marty Lambert, Gallatin
County Attorney, Gary Balaz, Deputy Gallatin County Attorney, Bozeman,
Montana

Submitted on Briefs: October 17, 2002

Decided: December 19, 2002

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2      In July of 1996, Franklin McLaughlin (McLaughlin), who was fifteen at the time, pled guilty in the Eighteenth Judicial District Court to the offense of aggravated assault, and was committed to the Department of Corrections (DOC) for a term of twenty-five years.  In 1997, the Sentence Review Division amended McLaughlin's sentence to a twenty-year commitment to DOC.  On July 17, 2001, McLaughlin filed a motion with the District Court requesting a sentence review hearing pursuant to § 41-5-2510, MCA.  Following a hearing, the District Court concluded that McLaughlin had not undergone substantial rehabilitation and accordingly, declined to reduce his sentence.  McLaughlin appeals *pro se* from this order.

¶3      McLaughlin filed a Notice of Appeal on February 28, 2002, and filed an Opening Brief on May 16, 2002.  Over two months after filing his Opening Brief, McLaughlin filed a Motion for Appointment of Counsel on July 31, 2002.  In an Order dated August 13, 2002, we took McLaughlin's motion under advisement, pending receipt and review of the State's response.  The State filed its Respondent's Brief on September 24, 2002.  McLaughlin then filed a Reply Brief on October 4, 2002, and on the same day, he again filed a Motion for

2

Appointment of Counsel, which was identical to his first motion. In both motions, McLaughlin alleged that the legal resources available to him at his place of confinement were inadequate.

¶4    McLaughlin presents the following issues on appeal:

1. Whether the District Court effectively changed McLaughlin's original sentence from a DOC commitment to a commitment to the Montana State Prison (MSP) in its order declining to reduce McLaughlin's sentence;

2. Whether the District Court violated McLaughlin's right to due process when it reviewed his sentence; and

3. Whether McLaughlin's counsel was ineffective.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5    On May 31, 1996, McLaughlin was charged as an adult with attempted deliberate homicide. McLaughlin pled guilty to the lesser offense of aggravated assault and waived preparation of a presentence report. On July 19, 1996, the District Court sentenced McLaughlin to DOC for a period of twenty-five years (twenty years for the offense of aggravated assault and five years for the use of a weapon). McLaughlin applied for sentence review, and in 1997 the Sentence Review Division amended his sentence to a twenty-year commitment to DOC, but upheld all other conditions of the original sentence.

¶6    In August of 1996, DOC initially placed McLaughlin at Pine Hills School, where he remained until he escaped a year later. After escaping, McLaughlin broke into a garage and stole a car and was later charged with and convicted of burglary and theft. After being sentenced for those offenses, McLaughlin was transferred to MSP in Deer Lodge, where he

stayed from January of 1998 to February, 2000. Upon leaving Deer Lodge, McLaughlin was transferred to several correctional facilities in Montana, including regional facilities in Glendive, Great Falls, and Shelby.

¶7    While at these facilities, McLaughlin continued to have disciplinary problems, and was written up at Deer Lodge and Glendive, and suspended from his job in the kitchen at the Shelby facility following an altercation with a guard. However, McLaughlin also participated in programs offered at the correctional facilities, obtaining his GED in 1999, completing anger management at Glendive, and briefly attending a Moral Reconation Therapy (MRT) group at the Shelby facility.

¶8    On July 17, 2001, approximately six weeks before he turned twenty-one, McLaughlin, with the aid of counsel, filed a motion with the District Court requesting a sentence review hearing pursuant to § 41-5-2510, MCA (1999). The court appointed a public defender to represent McLaughlin, and upon motion from McLaughlin, the District Court ordered a psychological evaluation of McLaughlin, which was conducted by Dr. Frank Seitz (Seitz), a clinical psychologist. The State did not object to either the motion for sentence review or the request for psychological evaluation. On February 6, 2002, the District Court conducted a sentence review hearing, receiving testimony from Seitz, McLaughlin, McLaughlin's mother, and a minister from the Prison Ministries of Montana.

¶9    After hearing testimony, the District Court took judicial notice of the Findings of Fact, Conclusions of Law and Order issued in 1996 in the proceeding transferring McLaughlin from Juvenile Court to Adult District Court. The District Court stated that based upon rule

4

violations, present psychological testing, and McLaughlin's own admissions that he does not believe he is rehabilitated, it simply could not conclude that McLaughlin met the statutory threshold of substantial rehabilitation by a preponderance of the evidence. On February 8, 2002, the District Court entered the written order declining to reduce McLaughlin's sentence.

## STANDARD OF REVIEW

¶10 When this Court reviews a district court's conclusions of law regarding the application of a statute, our standard of review is "whether the tribunal's interpretation of the law is correct." *State v. Peplow*, 2001 MT 253, ¶ 17, 307 Mont. 172, ¶ 17, 36 P.3d 922, ¶ 17 (citing *State v. Henning* (1993), 258 Mont. 488, 490-91, 853 P.2d 1223, 1225; and *State v. Miller* (1996), 278 Mont. 231, 233, 924 P.2d 690, 691). Our review of questions of constitutional law is plenary. *State v. Smith*, 2000 MT 57, ¶ 13, 299 Mont. 6, ¶ 13, 997 P.2d 768, ¶ 13 (citing *State v. Anderson*, 1998 MT 258, ¶ 6, 291 Mont. 242, ¶ 6, 967 P.2d 413, ¶ 6).

## DISCUSSION

### Issue 1

¶11 **Did the District Court effectively change McLaughlin's original sentence from a DOC commitment to a commitment to MSP in its order declining to reduce McLaughlin's sentence?**

¶12 In the original sentence imposed by the District Court in July of 1996, McLaughlin was committed to DOC for a period of twenty-five years. The Sentence Review Division subsequently amended the length of McLaughlin's sentence to twenty-years, but continued his commitment to DOC. However, in the District Court's February 8, 2002 order, declining

to reduce McLaughlin's sentence, the District Court erroneously found that McLaughlin was originally committed for a period of twenty-five years to MSP, not DOC. McLaughlin argues that this alteration imposes a harsher sentence on him.

¶13    It is clear that the District Court's February 2002 order simply upholds the previous orders, notwithstanding its erroneous recitation of McLaughlin's original sentence as a commitment to MSP. At the close of the hearing, when announcing its rationale for the decision, the court stated, "by virtue of the court concluding that there's not substantial rehabilitation, the sentence that is in place will continue in place." Moreover, in its February 8, 2002 order, the District Court concluded that "[t]he sentence ordered by the Sentence Review Division on March 4, 1997 shall remain in full force and effect." We conclude the District Court did not effectively impose a harsher sentence on McLaughlin when it mistakenly noted that McLaughlin was originally sentenced to MSP.

**Issue 2**

¶14    **Did the District Court violate McLaughlin's right to due process when it reviewed his sentence?**

¶15    McLaughlin argues the District Court violated his due process rights when it allegedly failed to follow statutorily required criteria for sentencing youths, namely §§ 41-5-2503 and -2510, MCA (1999). These statutes require that a district court order DOC to file status reports with the court concerning dispositions of criminally convicted youths, and also set out criteria for addressing sentence review hearings until the youth is twenty-one. McLaughlin

6

contends the absence of status reports also denied him the opportunity to provide examples of his rehabilitation, and thus violated his right to due process.

¶16 Under § 41-5-2503(1)(c), MCA (1999), when sentencing a youth adjudicated in district court pursuant to § 41-5-206, MCA, the court shall, among other things, "order [DOC] to submit a status report to the court, county attorney, defense attorney, and juvenile probation officer every 6 months until the youth attains the age of 21." These reports "must include a recommendation from [DOC] regarding the disposition of the criminally convicted youth." Section 41-5-2503(1)(c), MCA (1999). In addition, a district court is required to "review the criminally convicted youth's sentence pursuant to 41-5-2510 before the youth reaches the age of 21 if a hearing has not been requested under 41-5-2510." Section 41-5-2503(2), MCA (1999). Pursuant to § 41-5-2510(4), MCA (1999), before a court may amend a youth's sentence, it must determine whether the youth "has been substantially rehabilitated based upon a preponderance of the evidence."

¶17 Significantly, §§ 41-5-2503 and -2510, MCA, were part of an act passed by the 1999 Legislature entitled the "Criminally Convicted Youth Act," which became effective October 1, 1999. *See*, Title 41, Chapter 5, Part 25, MCA, Compiler's Comments. McLaughlin, however, was convicted and sentenced for an offense he committed in 1995. We have consistently held that the applicable sentencing statute is that statute in effect at the time crimes were committed. *See*, *State v. Frazier*, 2001 MT 210, ¶ 13, 306 Mont. 358, ¶ 13, 34 P.3d 96, ¶ 13 (district court did not have authority under §§ 46-18-203(7)(a)(iii) and 46-23-1013(2), MCA (1999), to alter length and nature of sentences upon revocation when those

7

provisions were not in effect at the time the underlying offenses were committed). *See also*, *State v. Moorman* (1996), 279 Mont. 330, 339, 928 P.2d 145, 150. Therefore, McLaughlin was not entitled to the benefit of the 1999 sentence review Act (the 1999 Act).

¶18 Under the laws in place at the time of his offense, McLaughlin was able to and in fact did seek amendment of his sentence, as evidenced by his successful application for sentence review which reduced his commitment to DOC from twenty-five years to twenty years. *See* § 46-18-901, et seq., MCA (1995) (allowing appellate review of legal sentence). *See also*, § 41-5-531, MCA (1995) (extending the same remedies available to adults in criminal proceedings to youths proceeded against under the Youth Court Act).

¶19 When McLaughlin applied for review of his sentence under the 1999 Act, the State failed to file a response or object to his request, and the District Court proceeded to conduct a sentence review hearing pursuant to § 41-5-2510, MCA (1999). Thus, McLaughlin in effect received the benefit of several provisions of the 1999 Act. However, because compliance with the 1999 Act was not required, we must conclude that the District Court did not infringe on McLaughlin's due process rights by not ordering or reviewing status reports pursuant to §§ 41-5-2503 and -2510, MCA (1999).

¶20 McLaughlin also asserts on appeal that the District Court denied him due process of law when it did not acknowledge that the self-improvement programs he had failed to complete were no longer offered by DOC, and that DOC did not offer any programs for treatment of his antisocial personality disorder. McLaughlin argues he should not be faulted for the shortcomings of DOC.

8

¶21     We conclude that the argument concerning the availability and quality of programs offered by DOC is not properly before us.  On appeal here is the District Court's conclusion that McLaughlin failed to establish that he had been substantially rehabilitated.  McLaughlin applied to the District Court for sentence review pursuant to § 41-5-2510, MCA (1999); he did not seek review of DOC's programs or rehabilitative efforts.  We therefore decline to consider this argument.

¶22     Though the law did not require it to do so, the District Court gave McLaughlin the benefit of many of the provisions of the 1999 Act, and carefully considered the evidence presented to it.  We therefore conclude that McLaughlin's due process rights were not violated by the District Court when it conducted a sentence review hearing pursuant to § 41-5-2510, MCA (1999).

**Issue 3**

¶23     **Was McLaughlin's counsel ineffective?**

¶24     In considering ineffective assistance of counsel claims on direct appeal and in postconviction proceedings, we apply the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  *See*, *State v. Hagen*, 2002 MT 190, ¶ 17, 311 Mont. 117, ¶ 17, 53 P.3d 885, ¶ 17.  *See also*, *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20 (petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden).  *Strickland's* two-part test requires that the defendant show that his counsel's performance was deficient

9

and that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Dawson*, ¶ 20 (citing *Strickland*, 466 U.S. at 687).

¶25 Under *Strickland*, a defendant alleging ineffective assistance of counsel must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Moreover, "a claim of ineffective assistance of counsel must be grounded in facts found in the record, not on 'mere conclusory allegations.'" *Hagen*, ¶ 19 (citation omitted).

¶26 Part of McLaughlin's assertion that his appointed counsel was ineffective is grounded in his argument that §§ 41-5-2503 and -2510, MCA (1999), were not followed. However, as discussed above, these sections were not effective until well after McLaughlin was sentenced. Therefore, we cannot fault his appointed counsel for not objecting to the absence of status reports mandated by the 1999 Act. Moreover, McLaughlin fails to demonstrate how he was prejudiced by a lack of status reports, particularly considering all the documents and testimony that were reviewed by the District Court. *See*, *Hagen*, ¶ 19 (claim of ineffective assistance of counsel cannot be grounded on mere conclusory allegations).

¶27 McLaughlin also argues his appointed counsel failed to interview the program facilitators within DOC, and thus could not present the argument that the opportunities for rehabilitation provided by DOC were somehow inferior. Again, McLaughlin fails to provide anything more than conclusory statements of how his counsel's failure to pursue this line of

10

argument prejudiced him. *See*, *Hagen*, ¶ 19. Moreover, as noted above, the issue before the District Court was whether McLaughlin had been substantially rehabilitated--an issue carefully considered by the District Court--not whether the programs at DOC were sufficient in quality and availability to rehabilitate McLaughlin.

¶28 Given the effective date of the statutes at issue and the limited purpose of McLaughlin's application for sentence review pursuant to § 41-5-2510, MCA (1999), we conclude that McLaughlin's conclusory arguments fail to demonstrate his counsel's performance was deficient under *Strickland*.

¶29 Finally, we address McLaughlin's request that counsel be appointed for him in this proceeding. We note that McLaughlin's initial application for a sentence review hearing pursuant to § 41-5-2510, MCA (1999), was filed on his behalf by counsel. This counselor filed a Notice of Limited Appearance to represent McLaughlin for the narrow purpose of filing a timely application for sentence review. He also filed a memorandum in support of the application, which included a motion for appointment of either himself or a public defender. The District Court granted the motion and appointed a public defender to represent McLaughlin at the sentence review hearing.

¶30 As we have acknowledged repeatedly in other cases, and in our Order entered in this matter on August 13, 2002, the right to counsel arises at every critical stage of the proceedings against a criminal defendant. *Ranta v. State*, 1998 MT 95, ¶ 17, 288 Mont. 391, ¶ 17, 958 P.2d 670, ¶ 17. Here, McLaughlin argues that this stage of the proceedings--an

11

appeal from an order denying a change of sentence--is a critical stage, thus entitling him to counsel.

¶31 We initially reserved the question of whether counsel should be appointed for McLaughlin because the request came late in the proceedings, nearly five months after McLaughlin filed his *pro se* Notice of Appeal, and more than two months after he filed his Opening Brief on appeal. Now, and for the reasons set forth above, we conclude that counsel need not have been appointed for McLaughlin here, and deny his late request for such appointment. We do so for a very basic reason--even if counsel had been appointed here, he or she would have been of no assistance to McLaughlin in presenting his substantive issue on appeal.

¶32 As already noted, McLaughlin's appeal arises from the District Court's failure to follow the requirements of §§ 41-5-2503, and -2510, MCA (1999), which are the statutes under which McLaughlin sought and obtained a sentence review hearing in the District Court. However, this statute simply does not apply to McLaughlin's circumstances in light of the fact that it was enacted three years after he was sentenced. No attorney could change this circumstance or convince us to disregard it. We therefore conclude that under these facts, it is not necessary for counsel to be appointed to represent McLaughlin in these proceedings.

¶33 Accordingly, we affirm the District Court's decision not to reduce McLaughlin's sentence.

/S/ PATRICIA COTTER

We Concur:


/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JIM REGNIER