**UNITED STATES of America, Appellee,**

v.

**Harvey R. RIDINGER, Appellant.**

**No. 86–1574.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1986.

Decided Nov. 21, 1986.

See also, D.C., 623 F.Supp. 1386.

Bruce W. Simon, Kansas City, Mo., for appellant.

Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

HENLEY, Senior Circuit Judge.

Following trial by jury Harvey R. Ridinger appeals from his convictions of one count of possession with intent to distribute methylphenidate and three counts of distributing hydromorphone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The district court [1] sentenced appellant to a period of nine years imprisonment on the possession conviction and a term of eleven years imprisonment on each of the distributing convictions, the eleven year sentences to run concurrently with each other and consecutively with the nine year sentence. Appellant was also fined a total of $200,000.00 and ordered to serve special parole terms. Ridinger raises two issues on appeal; first, that the search warrants for the search of his residence were facially invalid, and, second, that the district court

**1.** The Honorable D. Brook Bartlett, United States District Judge, Western District of Missouri.

erred in failing to instruct the jury to use greater caution in evaluating the testimony of the government's paid informant. Finding no error, we affirm.

In April, 1985 law enforcement officials requested and received a state search warrant for appellant's residence.[2] The warrant described the place to be searched as follows:

The residence located at 1601 Marsh, in Kansas City, Jackson County, Missouri, described as a light green house trailer. This trailer faces north and has a concrete step and porch like structure leading to the front door.

The warrant was executed on April 25, 1985. The search resulted in the seizure of a large amount of methylphenidate (ritalin), which was the subject of Count I of the indictment. The police also discovered a bottle of hydromorphone (dilaudid) and a large amount of cash on appellant's person.

In an unrelated federal investigation the FBI used a paid informant, Diana L. Singleton, to make drug purchases from appellant in August and September of 1985. Singleton had known appellant for several years and had purchased hydromorphone from him in the past. Singleton was a narcotics addict, a convicted felon, and was paid by the FBI for her services. Singleton made three controlled buys of hydromorphone from appellant at his residence which ultimately resulted in his indictment and conviction on the three counts of distributing hydromorphone.

On October 4, 1985 the FBI executed a federal search warrant on Ridinger's residence which described the places to be searched as follows:

1601 Marsh, Blue Summit, Missouri, consisting of two structures, the first being a single story white cinder block building, the west side of which faces toward Marsh, Kansas City, Missouri, having a sign on the northwest corner of the building stating "Metal World," 252-1603, Kansas City, Missouri, 1601 Marsh,

and the second structure being a green house trailer located immediately to the east of the first structure having black window trim.

The October searches resulted in the seizure of a television set used as part of the purchase price in one of the buys, syringes and several loaded firearms.

The correct street address of appellant's residence which was searched is 8300 Karleen and not 1601 Marsh as stated in the two search warrants. There is also an eighteen-foot silver trailer located at 8300 Karleen. Both of these factual discrepancies were raised before the district court in an untimely motion to suppress the fruits of the two searches. The district court denied the motion on the merits. In addition, appellant mentions for the first time on appeal that his residence is located in Blue Summit as stated in the federal search warrant, not Kansas City as stated in the state search warrant.

The fourth amendment requires that a search warrant describe with particularity the place to be searched. U.S. Const., amend. IV; *United States v. LeBron*, 729 F.2d 533, 536 (8th Cir.1984). This court has adopted the following test for determining the sufficiency of the description:

... whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.

*United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir.) (citations omitted), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Thus, an incorrect street address of the place to be searched is not necessarily fatal. *United States v. McCain*, 677 F.2d 657, 660–61 (8th Cir.1982); *see* 2 W. LaFave, *Search and Seizure* § 4.5, at 76–77 (1978). Accordingly, we turn to the application of the two-prong *Gitcho* test.

---

**2.** The appellant does not assert lack of probable cause for the issuance of the search warrant. Therefore, we will discuss the circumstances that led up to the search only as they are relevant to the two issues raised in this appeal.

■ The first prong requires that the search warrant describe the premises with sufficient particularity to enable its location with reasonable effort. Here, the street address contained in the two search warrants was 1601 Marsh, whereas the residence was actually located at 8300 Karleen.[3] While facially these addresses seem widely disparate, on closer examination they are not. Karleen (an east/west street) and Marsh (a north/south street) Streets intersect. Appellant's business, Metal World, is found on the southeast corner of this intersection and has the street address 1601 Marsh. Metal World is housed in a white, single story, cinder block building. Immediately behind and to the east of Metal World is appellant's residence. This residence is a green house trailer with a concrete step and porch-like structure leading to the front door. While appellant's residence does not front on Marsh Street, the property on which it is located is contiguous to appellant's business address which is 1601 Marsh Street. In light of the entire physical arrangement and the specificity of the description of appellant's residence, we conclude that the first prong of the *Gitcho* test is satisfied.

The second prong requires us to consider whether there is any reasonable probability that another premise might be mistakenly searched. As stated, the residence searched in this case was contiguous to the actual address contained in the search warrant. Further, the residence was described in both warrants with some specificity. Therefore, we conclude that there was no reasonable probability of an erroneous search. Both prongs of the *Gitcho* test being satisfied, we find the descriptions in the warrants sufficient and the warrants therefore valid.

■ Appellant's other claim of error involves the instructions given to the jury by the district court. At trial, the government called Diana Singleton as a witness. Ms.

Singleton, a convicted felon, was recruited by the FBI in August of 1985 while still an inmate of the Johnson County, Kansas Jail. Ms. Singleton was apparently approached by the FBI because of her previous drug dealings with appellant. Ms. Singleton made a series of three controlled drug purchases from appellant which ultimately resulted in his three "distributing" convictions. She received approximately $5,000.00 from the government for her services and the government also agreed to intercede on her behalf in a number of state prosecutions against her.

At the instruction conference, appellant requested that the following instruction be given to the jury:

You have heard evidence that witness Diana Singleton has an arrangement with the government under which she gets paid for providing information to the government. The government may present the testimony of such a person, and you may give her testimony such weight as you think it deserves. Whether or not her information or testimony may have been influenced by such payments is for you to determine. *You should, however, consider her testimony with greater caution and care than that of an ordinary witness.*

The district court gave this proposed instruction, in substance, except for the cautionary "tail" (emphasized portion). The district court found persuasive the comment in an Eighth Circuit jury instruction manual. *Eighth Circuit Pattern Instructions* § 6.05 (1985). The Advisory Committee noted that

[l]anguage of this sort [the cautionary tail] is often included in an instruction on the present subject. The Committee recommends that such language *not* be utilized, since there is no clear indication that it *must* be, and since it seems to be

---

**3.** Appellant also challenges in his brief the correct spelling of "Karleen" (we have adopted his spelling in this opinion). This point is wholly without merit as no warrant ever mentions that street name. Further, appellant's trial counsel signed a stipulation of facts which "misspelled" Karleen throughout.

an unwarranted intrusion into the jury's functions.

*Id.* (emphasis in original).[4] While such pattern jury instructions are helpful to the trial judge, they do not constitute adjudicative approval which must await case-by-case review by the appellate courts. Often such manuals of pattern jury instructions are simply organized compendiums of instructions which have survived appellate review. Thus, while the instruction as requested by appellant has received approval, *see infra* note 4, it does not inexorably follow that any deviation from the pattern language is impermissible.

"A district court has wide discretion in formulating appropriate jury instructions. A defendant is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, adequately and correctly cover the substance of the requested instruction." *United States v. Reda,* 765 F.2d 715, 719 (8th Cir.1985) (citations omitted). The instructions given by the district court in this case adequately and correctly covered the evaluation of Ms. Singleton's credibility. Relevant portions of the instructions are set forth in the margin.[5]

These instructions, taken as a whole, draw the jury's attention to the various factors impinging on Ms. Singleton's credibility as a witness.[6] *See United States v. Projansky,* 465 F.2d 123, 136 (2d Cir.), *cert. denied,* 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972). Further, this court has held (in the context of immunized accomplice testimony) that the cautionary tail was not required where additional evidence was presented which corroborated the testimony. *United States v. McGinnis,* 783 F.2d 755, 758 (8th Cir.1986). Ms. Singleton's testimony was corroborated. Accordingly, we find that the instructions adequately conveyed to the jury the need to examine the testimony of Ms. Singleton with great care and the district court did

---

**4.** Several other sources have included the cautionary tail in their model "paid informant" instruction. Committee on Model Jury Instructions Ninth Circuit, *Manual of Model Jury Instructions for the Ninth Circuit* § 4.10 (1985); Committee on Pattern Jury Instructions District Judges Association Eleventh Circuit, *Pattern Jury Instructions—Criminal Cases* Spec.Instr. 1.1 (1985); Federal Judicial Center Committee to Study Criminal Jury Instructions, *Pattern Criminal Jury Instructions* Instr. 25 (1982); 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 17.02 (1977). However, these committees do not comment on the necessity of including the cautionary tail.

**5.** An important part of your job will be making judgments about the testimony of the witnesses who will testify in this case. You should decide whether you believe what each person says, and how important that testimony is. In making that decision I suggest that you ask yourself a few questions: Did the person impress you as honest? Did he or she have any particular reason not to tell the truth? Did he or she have a personal interest in the outcome of this case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to accurately observe the things he or she testified about? Did he or she appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? These are a few of the considerations that will help you

determine whether you believe what a witness said.

\*      \*      \*      \*      \*      \*

You have heard that witness Diana Singleton has been convicted of crimes. You may consider that evidence in deciding whether to believe her and how much weight to give her testimony.

\*      \*      \*      \*      \*      \*

You have heard evidence that the United States promised Diana Singleton to intercede with state prosecuting authorities on her behalf. Whether or not this promise influenced her testimony is for you to determine. You may give her testimony such weight as you think it deserves.

\*      \*      \*      \*      \*      \*

You have heard that witness Diana Singleton has an arrangement with the United States under which she gets paid for providing information to the United States. Whether or not these payments influenced her testimony is for you to determine. You may give her testimony such weight as you think it deserves.

**6.** In his brief appellant canvasses in some detail the necessity of giving an addict-informer instruction. *See* 1 E. Devitt & C. Blackmar, *supra* note 4, § 17.03. While that instruction was not requested by appellant and absent plain error need not be considered here, Fed.R.Crim.P. 30, it is clear that the instructions as a whole were sufficient.

not err in refusing to give the cautionary tail.

Affirmed.