# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3545

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Dale Franklin Thurman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 17, 2010
Filed: November 22, 2010

_____

Before WOLLMAN, EBEL,[1] and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Dale Thurman was convicted of unlawful possession of a firearm and ammunition as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). Before trial, he moved to suppress evidence obtained during the search of a house in Marshall County, Iowa. The district court[2] denied Thurman's motion, and a jury

---

[1]The Honorable David M. Ebel, Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

found Thurman guilty as charged. He appeals the denial of his motion to suppress, and we affirm.

I.

In October 2006, Conservation Officer Jeremy King began to investigate illegal deer-baiting activity on property located at 1035 Zeller Avenue in Marshall County, Iowa. King determined that the property, which spanned approximately 39 acres of land, was owned by Thurman's father. On the property were a two-story frame house and a mobile home, roughly 200 yards apart, and several outbuildings. Near the frame house, there was a green sign labeled "1025" above a mailbox. Near the mobile home, there was a mailbox marked "1035 Zeller."

On December 2, King observed Dale Thurman and his son in separate tree stands on the property. After speaking with the two Thurmans, King issued a citation to Dale Thurman for illegal baiting activity and confiscated Thurman's muzzleloader. On the citation, King listed Thurman's address as "1035 Zeller Avenue."

After issuing the citation, King discussed hunting regulations with Thurman. According to King, Thurman asked whether he could hunt deer with a pistol. When King responded that a pistol could be used, Thurman stated that he had a few of those and pointed at the frame house.

King encountered Thurman again on December 5, 2006, when Thurman was hunting deer from his truck. King believed that Thurman was using a two-way communication device to hunt deer, so he explained to Thurman that this was impermissible. During the encounter, Thurman told King that he heard that King's house had been "shot to hell." When King asked if Thurman was threatening him, Thurman responded: "I have been in jail for 10 f---ing years and I would do 10 f---ing more for your ass." Thurman then drove away.

After running a criminal history check and discovering that Thurman was a convicted felon, King met with Detective Wade Ruopp of the Marshall County Sheriff's Office about his encounters with Thurman. Ruopp confirmed that Thurman was a convicted felon and that his right to possess firearms had not been restored. He began to prepare a search warrant application for Thurman's house. While preparing the application, Ruopp consulted the Marshall County Assessor's website. Ruopp testified that the website's listing for 1035 Zeller Avenue contained depictions of both the mobile home and the frame house. There was no listing on the website for 1025 Zeller Avenue.

The search warrant application stated that the premises to be searched was "the two story framed residential dwelling and outbuilding of 1035 Zeller Ave. located approximately one & two thirds mile north of Hwy. 96 on Zeller Avenue." The application also stated that the premises were "[p]ossessed by . . . Dale Franklin Thurman." In the application, Ruopp noted that Thurman had told King that he had pistol firearms in his house, that Thurman was a convicted felon, and that there was no record that Thurman's rights had been restored. Ruopp also attached King's reports describing King's two encounters with Thurman, and a page from the Marshall County Assessor's website. The attached website page pictured and described a two-story frame house at 1035 Zeller Avenue.

An Iowa magistrate judge issued a search warrant for the premises described in the application. Officers then searched the frame house, and they discovered several firearms and ammunition. A federal grand jury indicted Thurman for unlawful possession of a firearm and ammunition as a previously convicted felon. He moved to suppress the evidence obtained in the search of the frame house, but the district court denied his motion.

After a trial, a jury found Thurman guilty of the count charged in the indictment, and the district court sentenced him to 76 months' imprisonment.

Thurman appeals the district court's denial of his motion to suppress. When reviewing a denial of a motion to suppress evidence, we review the district court's legal conclusions *de novo*, and its factual findings for clear error. *See United States v. Wiest*, 596 F.3d 906, 909 (8th Cir. 2010).

II.

Thurman contends that the issuing magistrate lacked probable cause to authorize a search of the two-story frame house for firearms. Although the application recounted that "Mr. Thurman told Officer King that he had additional pistol firearms in his house," Thurman argues that "his house" was the mobile home located at 1035 Zeller Avenue. He says that nothing in the warrant application demonstrates a fair probability that firearms would be found in the two-story frame house, a structure that he says is located at 1025 Zeller Avenue and was not "his house."

Assuming for the sake of analysis that Thurman's expectation of privacy in a house that he now says was not his residence is sufficient for him to claim Fourth Amendment protection, *cf. Minnesota v. Carter*, 525 U.S. 83, 88-90 (1998), there is no basis to suppress the evidence. Despite Thurman's protestations, the warrant application did say that the two-story frame house was "[p]ossessed by" Thurman. This statement was conclusory, but so long as the issuing magistrate can fairly infer the source and basis of the information, the magistrate permissibly may consider such an assertion when determining whether probable cause exists. *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010); *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007).

We think the warrant application, read as a whole, gave the issuing magistrate a substantial basis to conclude that evidence of firearms offenses would be found in the two-story frame house. The warrant application recounted Thurman's statement that he had additional pistol firearms in "his house," reported that the two-story frame

-4-

house was "[p]ossessed by" Thurman, and explained that Thurman was a convicted felon. As to why this house was possessed by Thurman, the application identified the real property at 1035 Zeller Avenue as the location where King confronted Thurman and his son about illegal baiting activity. The application also included information from the Marshall County Assessor's Office showing that the property at 1035 Zeller Avenue was owned by Thurman's father, that the two-story frame house was located at that address, and that the frame house was the only "house" (as opposed to "mobile home") on the property. On that basis, the issuing magistrate reasonably could infer that investigating officers had determined through investigation that Thurman's reference to "his house" meant the two-story frame house. Thurman's status as a felon and his admission that he possessed pistols in his house provided ample justification for issuance of the warrant.

Even assuming, moreover, that the warrant application was technically deficient for failing adequately to identify the source and basis of the assertion that Thurman "possessed" the two-story frame house, it is clear that the searching officers acted in objectively reasonable good-faith reliance on the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984). For the reasons stated, an objectively reasonable officer could believe that the application to search the two-story frame house, which was premised on an assertion that Thurman possessed the house and that it was "his house," was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotations omitted). And if that were not enough, when assessing whether officers acted in objectively reasonable good-faith reliance on a warrant, we consider in this circuit the totality of the circumstances, including what the affiant knew but did not include in the application for the warrant. *United States v. Johnson,* 78 F.3d 1258, 1263 (8th Cir. 1996); *United States v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990); *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987). In this case, Detective Ruopp knew from Officer King that when Thurman stated that he had a couple of pistols, Thurman

pointed to the two-story frame house, not to the mobile home. This additional information bolsters the officers' good-faith reliance on the warrant.

Thurman also seems to assert that the search warrant is invalid because it did not "particularly describ[e] the place to be searched." U.S. Const., amend. IV. He complains that while the warrant authorized a search of "the two story framed residential dwelling and outbuildings of 1035 Zeller Ave. located approximately one & two thirds mile north of Hwy. 96 on Zeller Avenue," the address of the two-story framed house was actually 1025 Zeller Avenue.

The particularity requirement "is a standard of 'practical accuracy' rather than a hypertechnical one." *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996) (quoting *United States v. Lowe*, 50 F.3d 604, 607 (8th Cir. 1995)). We think it clear that the warrant described the place to be searched "with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort," and that there was no "reasonable probability that another premise might be mistakenly searched." *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979). Even assuming, contrary to the information posted by the Marshall County Assessor, that the frame house is not located at 1035 Zeller Avenue, "an incorrect street address of the place to be searched is not necessarily fatal." *United States v. Ridinger*, 805 F.2d 818, 819 (8th Cir. 1986). Instead, "[w]here one part of the description of the premises to be searched is inaccurate, but the description has other parts which identify the place to be searched with particularity, searches pursuant to such warrants have been routinely upheld." *Id*. at 371.

Here, the warrant contained sufficient information to identify the particular frame house at issue as the premises to be searched. The warrant directed law enforcement officers to a specific location on Zeller Avenue, one and two-thirds mile north of Highway 96. Once the officers arrived at this general area, there was a mobile home and a two-story frame house roughly 200 yards apart. The area was

rural, with only one other residence within a one block mile. Although the officers were confronted with a green sign near the frame house labeled "1025," which conflicted with the address of "1035" on the warrant, the warrant identified the place to be searched as a two-story framed residential dwelling, and this specification ensured that officers would enter the correct premises at the Zeller Avenue location.

*    *    *

The judgment of the district court is affirmed.

_____