REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  1293

September Term, 2012

_____

DONTAYA PRESTON A/K/A DONTAE
PRESTON

v.

STATE OF MARYLAND

_____

Eyler, Deborah S.,
*Matricciani,
Raker, Irma S.
    (Retired, specially assigned),

JJ.

_____

Opinion by Raker, J.

_____

Filed: July 30, 2014

*Matricciani, Albert J., Jr., J., participated in
the hearing of this case but retired prior to the
issuance of this opinion.

Dontae Preston, appellant, was convicted in the Circuit Court for Baltimore City of first-degree murder, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun. Before this Court he presents the following question for our review: Did the court abuse its discretion in declining to give a "witness promised benefit" jury instruction? We shall hold that the trial court did not abuse its discretion and affirm.

I.

Appellant was indicted by the Grand Jury for Baltimore City with first-degree murder, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun. Appellant proceeded to trial before a jury in the Circuit Court for Baltimore City.

On the evening of March 14, 2009, Keon Barnes was shot and killed outside Nichelle Payton's house in Baltimore City where he and appellant were attending a "pajama party." There were two eyewitnesses to the events. Katrina Harrell testified that when she was going to her car, she saw Mr. Barnes and appellant talking to each other on Ms. Payton's porch. After entering her car, she heard gunshots, and when she looked up, she saw Mr. Barnes lying on the steps and appellant standing over him holding a gun. Ms. Payton testified that she heard gunshots when she was preparing for the party. She ran upstairs, and when she looked out her bedroom window she saw Mr. Barnes lying on the steps and appellant heading toward his car. Both Ms. Harrell and Ms. Payton selected appellant from a photo array. Ms.

Harrell identified appellant as the person who shot Mr. Barnes, and Ms. Payton stated that appellant was at her party and that she saw him going to his car after Mr. Barnes was shot.

Defense counsel attempted to establish that Ms. Payton cooperated fully with the State only because the police agreed to move her to free, protective housing for several months. Defense counsel told the court that the State paid $13,530 to move and house Ms. Payton rent-free from July 2009 through February 2010. Ms. Payton testified that some days after the murder, appellant came to her house and knocked on the door, but that she did not answer because she was scared. Sometime after, she called the police and asked to be moved. Ms. Payton testified on direct examination that when she provided her statement to the police and identified appellant in the photo array, the police had not yet promised to move her. On cross-examination, Ms. Payton admitted that she did not tell the police initially that she witnessed a portion of the shooting. Defense counsel then questioned Ms. Payton as follows:

> "[DEFENSE COUNSEL]: And, in fact, you didn't cooperate or talk to the police or tell them anything about anything until after the point in time in which you say [appellant] came and knocked on your door? Is that correct?
>
> MS. PAYTON: Correct.
>
> [DEFENSE COUNSEL]: And that's when you then went and called the detectives and said I want to be moved, correct?
>
> MS. PAYTON: He came to my house again.
>
> [DEFENSE COUNSEL]: And you said that you wanted to be moved?
>
> MS. PAYTON: Right.

2

[DEFENSE COUNSEL]: And on that day when they came to your house, you didn't give them a statement saying anything about anybody going across the street, did you?

MS. PAYTON: No.

[DEFENSE COUNSEL]: It wasn't until after you got assurances that they were going to move you, put you up and pay for you that you then gave a taped statement, isn't that correct?

MS. PAYTON: Correct. No."

Detective Michael Moran testified that he spoke to Ms. Payton on several different occasions during the course of his investigation because she was scared and only volunteered small amounts of information at each interview. He acknowledged that no statement was taken from Ms. Payton on the night of the murder or shortly thereafter. Detective Moran testified that on April 3, 2009, Ms. Payton contacted him and told him that she was afraid for her life. He advised her to come to his office that day, but she declined, saying that she had something pressing to do with her children. On April 8, Ms. Payton came to the Homicide Department, provided a taped statement in which she stated that she witnessed a portion of the shooting, and picked out appellant from a photo array. On April 14, Detective Moran requested to have Ms. Payton moved to protective housing.

Defense counsel questioned Detective Moran as follows:

"[DEFENSE COUNSEL]: So, Detective, when you first got this phone call talking about how scared she was, why wouldn't you make the request then?

3

DETECTIVE MORAN: At that time, she was not completely honest as to what she saw. She was still really scared. She knows —

[DEFENSE COUNSEL]: So was it not until she gave you —

THE COURT: Counsel.

[DEFENSE COUNSEL]: — that you asked for it then?

THE COURT: Counsel. Counsel. I'm not saying it again, okay? Continue answering your question.

DETECTIVE MORAN: Could you repeat the question, sir?

[DEFENSE COUNSEL]: I'll rephrase the question. How come you waited until after she did a photographic array to put in that request to have her moved when she indicated that she was scared on April 3rd?

DETECTIVE MORAN: I actually believe it was under her request. It's a lot for someone to move their life. You know, you got kids. She has a grandmother who was sick in the house. That's her neighborhood. That's her life. And that's a lot to move somebody. So I think it was under her request that she finally said, okay, I'm ready now."

Defense counsel requested the MSBA Criminal Pattern Jury Instruction 3:13, "Witness Promised Benefit," as an interim instruction before Ms. Payton testified based on the protective housing provided to Ms. Payton. The requested instruction reads as follows:

"You may consider the testimony of a witness who [testifies] [has provided evidence] for the State as a result of [a plea agreement] [a promise that he will not be prosecuted] [a financial benefit] [a benefit] [an expectation of a benefit]. However, you should consider such testimony with caution, because the testimony may have been influenced by a desire to

4

gain [leniency] [freedom] [a financial benefit] [a benefit] by testifying against the defendant."

MJPI-Cr 3:13.  The court declined to give the instruction at that time, and stated the following:

> "I'm going to say no right now, but depending upon how she testifies and what she says and whatever the other officers may say, I may revisit it.
>
> But based on what you've proffered, I don't believe it's appropriate.  I believe it would be a situation where every time a witness is relocated or something along those lines, we'd need to read this.  I don't think that's what this is for."

Later, when the court and parties discussed the jury instructions to be used at the end of the case, defense counsel objected to the omission of the "witness promised benefit" instruction.  The court denied the requested instruction, ruling as follows:

> "All right.  I have, again, I don't know what else is going to come out but, based on what has been presented so far, I still do not believe that it is an appropriate instruction given the fact that it was housing and I'm not sure, at least at this point, that it was an exchange for—let's see.
>
> 'You may consider the witness who either testifies,' and she has, 'or provided evidence,' which she did for the State, 'as a result of a plea agreement, a promise that he will not be prosecuted, a financial benefit, or benefit.'
>
> This Court is not satisfied that the testimony or evidence was as a result of.  So for those reasons, your request for that is denied over your objection."

5

Defense counsel did not argue to the jury in closing that Ms. Payton provided evidence for the State because she received free, protective housing in return, and that her testimony might be less credible because of this benefit.

The jury convicted appellant of first-degree murder, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun. The court sentenced appellant for the murder to a term of incarceration of life, for the use of a handgun, to a consecutive term of incarceration of twenty years, and for the carrying conviction, to a concurrent term of incarceration of three years.

This timely appeal followed.

II.

Appellant argues that he was entitled to a "witness promised benefit" instruction because Ms. Payton provided some evidence in her testimony that she expected to be moved to free housing in exchange for her cooperation with Detective Moran's investigation. According to appellant, the fact that Ms. Payton provided a statement only *after* she was promised the housing benefit is significant. Appellant argues that he need not show that Ms. Payton *actually* received a promised benefit as a result of her cooperation, but only that she *expected* to receive one. According to appellant, the timing of Ms. Payton's cooperation is strong circumstantial evidence of her expectation of a *quid pro quo* by the State. Appellant

6

maintains also that Detective Moran's testimony suggests that he was only willing to provide Ms. Payton with benefits in exchange for her honest cooperation.

The State counters that there is simply no evidence in either Ms. Payton's or Detective Moran's testimony that Ms. Payton was promised any benefit for her cooperation. The State maintains that there was no *quid pro quo*, and that nothing Ms. Payton testified to was a result of a promise. The fact that a witness merely *receives* a benefit does not warrant a jury instruction. Second, the State argues that the free housing benefit received by Ms. Payton was not the type of benefit that would require a special instruction because it is not akin to a plea agreement or a promise by the State that it will not prosecute the defendant. Although the instruction refers also to a "financial benefit" or any other benefit, the State maintains that it is applicable only to a paid informant who has an agreement or ongoing relationship with the State. Third, the State argues that the requested instruction was fairly covered by the standard instructions on witness credibility that the court provided, which told the jury to consider whether any witness had a motive not to tell the truth or had an interest in the outcome of the case. The State explains that several federal courts have held that it is not error for trial judges to decline to provide similar "witness benefit" instructions because the content is fairly covered by standard credibility instructions. Fourth, the State argues that because appellant was free to raise the issue of Ms. Payton's housing in cross-examination and in closing, any error was harmless beyond a reasonable doubt.

7

III.

Rule 4-325 governs jury instructions in criminal cases. The Rule provides, in pertinent part, as follows:

> "The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."

Rule 4-325(c). The Rule has been interpreted to require the court to give an instruction requested by a party when a three-part test is met: (1) the instruction correctly states the law; (2) the instruction applies to the facts of the case, or in other words, is generated by the evidence; (3) its content is not fairly covered in another instruction. *Dickey v. State*, 404 Md. 187, 197-98, 946 A.2d 444, 450 (2008); *Roach v. State*, 358 Md. 418, 429, 749 A.2d 787, 792 (2000). For an instruction to be generated by the evidence, the defendant need only show that "some evidence" supports the giving of the instruction. *McMillan v. State*, 428 Md. 333, 355, 51 A.3d 623, 636 (2012). "If there is any evidence relied on by the defendant which, if believed, would support his claim the defendant has met his burden." *Id.* at 356, 51 A.3d at 636-37 (internal alterations and ellipses omitted).

Nonetheless, Rule 4-325(c) "is not 'absolute.'" *Gunning v. State*, 347 Md. 332, 347, 701 A.2d 374, 381 (1997). In *Gunning*, the Court of Appeals considered whether a trial court erred in refusing to give an instruction that the testimony of a single eyewitness—who was the only one who identified the defendant—be viewed with "great care." The Court noted

8

that other jurisdictions were split as to whether the eyewitness identification instruction should be mandatory. *Id.* at 345, 701 A.2d at 380. The Court held that the decision whether to give the instruction should be left to the sound discretion of the trial court, stating as follows:

> "We do not find instructions on such issues to be always mandatory, but neither do we consider them never necessary nor *per se* improper as suggested by the trial judge. We instead recognize that an identification instruction may be appropriate and necessary in certain instances, but the matter is addressed to the sound discretion of the trial judge."

*Id.* at 348, 701 A.2d at 382.

In particular, the Court recognized that an eyewitness identification instruction need not be given when other instructions "fairly cover" the subject matter of the instruction requested. *Id.* The Court concluded with the following:

> "[A] request for an eyewitness identification instruction may be rejected when there is corroboration of the defendant's participation in the crime, when the circumstances surrounding the eyewitness identification do not give rise to any reasonable doubts as to its accuracy, or when other instructions contain criteria or guidance that is similar to the requested instruction. Such determinations lie within the sound discretion of the trial court."

*Id.* at 354-55, 701 A.2d at 385. *See also Dickey*, 404 Md. at 207, 946 A.2d at 456 (holding that a requested instruction regarding the reliability of a drug user's perception of events was fairly covered by general instructions on witness credibility); *Jackson v. State*, 69 Md. App. 645, 662, 519 A.2d 751, 759 (1987) (a requested instruction that the testimony of an admitted

9

perjurer should always be considered with great care and weighed with caution was fairly covered by a general instruction on witness credibility). *Cf. Patterson v. State*, 356 Md. 677, 694, 741 A.2d 1119, 1127 (1999) (declining to require courts to provide a "missing evidence instruction" even when generated by the evidence because most instructions regarding factual inferences that could be drawn by the jury are not mandatory).

In this case, defense counsel requested the MSBA Criminal Pattern Jury Instruction 3:13, "Witness Promised Benefit."  The instruction reads as follows:

> "You may consider the testimony of a witness who [testifies] [has provided evidence] for the State as a result of [a plea agreement] [a promise that he will not be prosecuted] [a financial benefit] [a benefit] [an expectation of a benefit]. However, you should consider such testimony with caution, because the testimony may have been influenced by a desire to gain [leniency] [freedom] [a financial benefit] [a benefit] by testifying against the defendant."

The instruction advises the jury that it may consider the testimony of a witness who provided evidence for the state "as a result of" an "expectation of a benefit," but that such testimony should be considered "with caution" because it may have been influenced by a desire to gain the benefit.  Similar pattern jury instructions appear in jury instruction manuals and handbooks for the federal courts and several of our sister states, with some minor variations.[1]  What all such cautionary instructions have in common, and what differentiates

---

[1]One common version of the witness benefit instruction appears in Devitt & Blackmar's Federal Jury Practice and Instructions, and instructs the jury to view an informer's testimony "with greater care" than the testimony of an ordinary witness.

(continued...)

them from general instructions on the credibility of witnesses, is that they single out for particular scrutiny and caution witnesses who testify because of benefits received.

Several courts have considered the applicability of these "witness benefit" instructions to undercover agents, jailhouse informants, accomplices, and other witnesses who testify for pay, immunity, or other personal advantage. Arguments in favor of "witness benefit" instructions assume that a witness promised a benefit by the State has greater motivation to lie than the typical witness. Perhaps an informant motivated by greed will invent or exaggerate matters to obtain additional compensation or a benefit. *See United States v. Cook*, 102 F.3d 249, 251 (7th Cir. 1996). An informant's testimony may be considered suspect because the witness is "primarily motivated by personal gain and not some independent law enforcement purpose." *People of Territory of Guam v. Dela Rosa*, 644 F.2d 1257, 1259-60 (9th Cir. 1980). Some courts have noted that a witness promised a benefit by the State has an incentive to implicate the accused falsely, and thus that witness' testimony is no less suspect than that of an accomplice who expects leniency from the State. *See State v.*

---

(...continued)
1A KEVIN F. O'MALLEY, ET. AL., FEDERAL JURY PRACTICE & INSTRUCTIONS § 15.02 (5th ed. 2000). Other manuals state that testimony of an informer should be given the weight it deserves, but must be considered with caution and care. *See, e.g.*, FEDERAL CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 3.13 (1999). Oftentimes courts refer to the portion of these instructions which require the jury to scrutinize the credibility of the informant witness as the "cautionary tail." *See United States v. Ridinger*, 805 F.2d 818, 820 (8th Cir. 1986).

*Patterson*, 886 A.2d 777, 789-90 (Conn. 2005). Maryland's "witness promised benefit"

instruction, like similar instructions, advises the jury of these credibility considerations.

We have uncovered no Maryland case addressing whether a trial court must provide

the "witness promised benefit" instruction in applicable circumstances, or if instead it is

within the sound discretion of the court. Our research uncovered only one case in which this

Court ruled on the applicability of the instruction at all. *See Stouffer v. State*, 118 Md. App.

590, 630 (1997), 703 A.2d 861, 880-81, *aff'd in relevant part*, *State v. Stouffer*, 352 Md. 97,

721 A.2d 207 (1998).[2] In *Stouffer*, this Court held that a similar "witness benefit" instruction

for a witness who received a rent payment from the State was not supported by the evidence

when there was no showing that a witness testified *as a result of* financial gain. We

explained as follows:

> "Appellant was able to elicit evidence that, *at the time* of the
> witness's statement, she was told she would receive the
> payment. There was no showing, however, that the witness was
> promised any financial benefit before the statement was made,
> nor was there evidence of a *quid pro quo*. The court's general
> instructions as to the credibility of a witness, in our view, fairly
> and adequately address those issues that were supported by the
> evidence."

*Id.* (emphasis in original). Because *Stouffer* held that no "witness benefit" instruction was

generated by the evidence, it did not address whether the instruction must be provided when

---

[2]Maryland trial courts have provided the MSBA Criminal Pattern Jury Instruction
3:13, "Witness Promised Benefit," on occasion. *See, e.g.*, *Archer v. State*, 383 Md. 329, 371-
72 n.4, 859 A.2d 210, 235-36 n.4 (2004).

12

generated, or alternatively whether the credibility issues raised are fairly covered by general instructions.

In the case *sub judice*, however, the jury could have drawn the inference that Ms. Payton provided her statement to the police with the expectation that she would receive protective housing in return. As such, we consider whether the trial court erred in declining to instruct the jury as provided in MPJI-Cr 3:13, the "witness promised benefit" instruction.

The United States Supreme Court observed that "[t]he use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility," and therefore allowed defendants "broad latitude to probe credibility by cross-examination *and to have the issues submitted to the jury with careful instructions*." *On Lee v. United States*, 343 U.S. 747, 757 (1952) (emphasis added). The Supreme Court did not affirmatively require trial courts to provide an informer instruction, nor does the language of the Court's opinion suggest that the discretion of the trial court should be cabined.[3]

Several jurisdictions have held that a trial court does not abuse its discretion in declining to instruct the jury as to the "witness benefit" instruction, reasoning that the general credibility instruction given in the case fairly covered the issue. *See, e.g.*, *State v. Knight*, 13

---

[3]In *Hoffa v. United States*, 385 U.S. 293, 311-12 and n.14 (1966), the Supreme Court acknowledged that the informant in the case had a motive to lie, but approved the trial court's general credibility instruction which told the jury to consider benefits witnesses received but did not single out informants for special scrutiny or attention.

A.3d 244, 249 (N.H. 2011); *United States v. Cook*, 102 F.3d 249, 252 (7th Cir. 1996); *United States v. Ridinger*, 805 F.2d 818, 821 (8th Cir. 1986); *United States v. Hoffa*, 349 F.2d 20, 52 (6th Cir. 1965), *aff'd*, *Hoffa v. United States*, 385 U.S. 293 (1966). *See also West v. Commonwealth*, 161 S.W.3d 331, 336 (Ky. 2004). The United States Court of Appeals for the Seventh Circuit, Judge Frank Easterbrook writing for the court, held that as a general rule, a particularized instruction highlighting informant testimony and requiring caution in the evaluation of that testimony is not required. The court explained as follows:

> "A special instruction about informants implies that their testimony remains less reliable than that of other witnesses even after all arguments pro and con about bias have been considered. Yet why should that be so? Many witnesses in criminal cases are unreliable—they are the defendant's confederates in crime, or live in the shadows of the law. Many are convicted felons who have demonstrated unwillingness to abide by the law, including the law against perjury. Even victim eyewitnesses may give unreliable testimony, because of the shortcomings of memory, the difficulty of categorizing facial features of other ethnic groups, and the tricks the mind plays on people desperate to pin the blame on someone.

> * * *

> All of this leads us to conclude that an instruction singling out paid informants' testimony as especially untrustworthy need not and should not be given as a matter of course. Such an instruction may be appropriate when a particular informant appears to present unusually great risks, which the judge fears the jury might underestimate unless the subject is drawn to its attention. This in turn implies that the decision either to give or to refrain from giving an instruction on the subject is committed to the discretion of the district court, which is best situated to detect and deal with threats of unreliable testimony, and that appellate review is deferential.

14

* * *

> Given the pervasiveness of reliability problems, we think it adequate, in the main, to give a general credibility instruction referring to the possibility of bias, which coupled with cross-examination and closing argument by counsel will put the subject before the jury for decision."

*Cook*, 102 F.3d at 252-53.

We agree with the Seventh Circuit that the decision whether to give the jury a particularized credibility instruction is left to the sound discretion of the trial judge. The general instructions on the credibility of witnesses, which refer to the possibility of bias and motive to testify falsely, ordinarily fairly cover the credibility concerns with witnesses who received a benefit. Should the facts suggest that a witness who received a benefit presents particular risk, the trial judge retains discretion to instruct the jury accordingly.

We note that several courts have disagreed with the Seventh Circuit and held that an informant instruction *must* be provided when applicable. *See, e.g.*, *Patterson*, 886 A.2d at 790; *Moore v. State*, 787 So. 2d 1282, 1287-88 (Miss. 2001); *United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990); *United States v. Cervantes-Pacheco*, 826 F.2d 310, 316 (5th Cir. 1987). Nonetheless, those courts have reversed the trial court only when the testimony of the informant is not corroborated and that testimony provided the only strong evidence of guilt. *Patterson*, 886 A.2d at 791-92; *State v. Grimes*, 982 P.2d 1037, 1043 (Mont. 1999); *Dela Rosa*, 644 F.2d at 1260; *United States v. Garcia*, 528 F.2d 580, 587-88 (5th Cir. 1976).

15

Moreover, some of the cases that reversed for failure to provide an informant instruction dealt with jailhouse informants who testified to confessions that took place in jail. *Patterson*, 886 A.2d at 790; *Moore*, 787 So. 2d at 1287. The testimony of a jailhouse informant—someone who did not witness the events surrounding the crime —arguably raises more serious credibility concerns. *See State v. Diaz*, 25 A.3d 594, 606 (Conn. 2011) (holding that the rule in *Patterson* applies only to jailhouse informants, but when a witness receives a benefit for testifying about the events surrounding the crime, "cross-examination and argument by counsel are far more likely to be adequate tools for exposing the truth.").

We turn to the facts *sub judice*. Whether Ms. Payton expected to receive a *quid pro quo* for her statement to the police describing what she saw is not clear from the record. We acknowledge, however, that the timing of Ms. Payton's cooperation with the police may have permitted the jury to draw such an inference. Initially, Ms. Payton was reluctant to discuss the crime, and provided a statement only once Detective Moran invited her to the police station to discuss protective housing. The jury could have inferred that she agreed to cooperate because she expected the police to provide her with rent-free protective housing. The housing, worth $13,530, was a substantial financial benefit, and arguably undermined Ms. Payton's credibility by providing her with a motive to lie.

Nonetheless, we hold that the court did not abuse its discretion in declining to provide MJPI-Cr 3:13, the "witness promised benefit" instruction. The trial court is best situated to

evaluate specific reliability issues, and it exercised properly its wide discretion in denying appellant's request.

The standard credibility instructions provided by the court "fairly covered" the credibility concerns regarding Ms. Payton's testimony. The court gave the MSBA Criminal Pattern Jury Instruction 3:10, "Credibility of Witnesses," which instructs the jury to consider "whether the witness has a motive not to tell the truth" and "whether the witness has an interest in the outcome of the case." Additionally, defense counsel had a full opportunity to cross-examine Ms. Payton and to bring out any potential inconsistencies in her testimony. Defense counsel cross-examined Ms. Payton about the timing of the benefit she received from the State, thus suggesting to the jury that she may have provided her statement because the State agreed to move her to protective housing. Defense counsel was free to argue in closing that the evidence demonstrated that Ms. Payton cooperated with the police because they agreed to move her to protective housing, although defense counsel did not make this argument.

Furthermore, all jurisdictions acknowledge that a trial court does not commit reversible error in refusing to provide the instruction when the testimony of the informer is corroborated by other evidence. *See, e.g.*, *United States v. Holmes*, 229 F.3d 782, 788 (9th Cir. 2000); *Grimes*, 982 P.2d at 1043; *United States v. Williams*, 59 F.3d 1180, 1183 (11th Cir. 1995); *Ridinger*, 805 F.2d at 821; *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir. 1979); *Garcia*, 528 F.2d at 587-88; *United States v. Lee*, 506 F.2d 111, 121 (D.C. Cir. 1974).

17

If an informer's testimony is not corroborated, courts have been concerned that he or she manufactured the allegations against the defendant. *See State v. Draughn*, 602 N.E.2d 790, 796 (Ohio Ct. App. 1992). When, on the other hand, the testimony of an informer is corroborated, there is little or no danger that the jury will base its verdict solely on the testimony of a witness who may have had good reason to lie. *See Williams*, 59 F.3d at 1183; *Garcia*, 528 F.2d at 588. If the informer's testimony is not the only strong evidence of guilt, courts have held that a general credibility instruction is sufficient. *See Holmes*, 229 F.3d at 788; *Jones v. United States*, 396 F.2d 66, 68 (8th Cir. 1968).

In the case at bar, Ms. Payton's testimony was corroborated by Ms. Harrell's testimony. Ms. Harrell heard the gun go off while she was sitting in her car, and saw appellant holding the gun standing over the victim. She later identified appellant in a photo array as the person who shot Mr. Barnes. Ms. Payton heard gunshots, saw the victim on the ground, and saw appellant going to his car, but did not see appellant standing over Mr. Barnes holding a gun. Ms. Harrell saw everything Ms. Payton did, and more.

For all of these reasons, the court did not abuse its discretion in declining to provide the "witness promised benefit" instruction to the jury.[4]

---

[4]Because we hold that the court did not abuse its discretion in declining to give the "witness promised benefit" instruction, we need not address the State's alternative argument that the benefit provided to Ms. Payton was not the type of benefit that the instruction was intended to cover.

18

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**